UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:                                              Chapter 13
THOMAS PASCAL,                                      Case No. 17-29659-SVK
    Debtors.

NOTICE OF MOTION BY FEDERAL NATIONAL MORTGAGE ASSOCIATION
("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING
UNDER THE LAWS OF THE UNITED STATES OF AMERICA
FOR RELIEF FROM AUTOMATIC STAY AND ABANDONMENT

Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America ("Movant")[1] has filed papers with the bankruptcy court to obtain relief from the automatic stay and abandonment.

**<u>Your rights may be affected.</u> You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant relief from the automatic stay and abandonment, or if you want the court to consider your views on the motion, then within 14 days of the filing date indicated on this notice, you or your attorney must file with the court a written response explaining your position and requesting a hearing at:

    Clerk, U.S. Bankruptcy Court
    Eastern District of Wisconsin
    517 East Wisconsin Avenue
    Milwaukee, WI 53202

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the deadline stated above.

You must also mail a copy to:

    O'Dess and Associates, S.C.
    Attn: D. Alexander Martin
    1414 Underwood Avenue, Suite 403

---

[1] **Seterus, Inc., is the authorized sub-servicer for Fannie Mae. A copy of the Limited Power of Attorney is attached as Exhibit 1.**

Wauwatosa, WI 53213

Rebecca R. Garcia
Chapter 13 Standing Trustee
P.O. Box 3170
Oshkosh, WI 54903-3170

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting the relief requested.

Dated at Wauwatosa, Wisconsin this ___ day of _____ , 2018.

O'DESS AND ASSOCIATES, S.C.
Attorneys for Movant


By:     D. Alexander Martin
        State Bar ID No. 1046591

        Case No. 17-29659-svk


For informational purposes and to comply with applicable law only. This should not be construed as an attempt to collect a debt.
O'Dess and Associates, S.C., is attempting to collect a debt and any information obtained will be used for that purpose.
If you have previously received a Chapter 7 Discharge in Bankruptcy, this correspondence should not be construed as an attempt to collect a debt.

Drafted by:
    D. Alexander Martin
    O'Dess and Associates, S.C.
    1414 Underwood Avenue, Suite 403
    Wauwatosa, WI 53213
    (414) 727-1591
    (414) 727-1590 fax
    dmartin@odesslaw.com

2

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:                                               Chapter 13
THOMAS PASCAL,                                       Case No. 17-29659-SVK
        Debtors.

## MOTION BY FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA FOR RELIEF FROM AUTOMATIC STAY AND ABANDONMENT

Federal National Mortgage Association ("Fannie Mae"), a corporation organized and

existing under the laws of the United States of America ("Movant"), through its attorneys,

O'Dess and Associates, S.C., pursuant to 11 U.S.C. §§362(d) and 554(b) of the Bankruptcy Code

and Rules 4001(a) and 6007(b) of the Federal Rules of Bankruptcy Procedure, moves the

bankruptcy court for relief from the automatic stay and abandonment, and in support states as

follows:

1.    Debtor Thomas Pascal filed a voluntary petition under chapter 13 of the Bankruptcy

Code on September 29, 2017.

2.    On or about February 21, 2006, debtor executed and delivered a note in favor of

CSMC Inc., dba Central States Mortgage, Corporation for an original principal sum of

$70,500.00 ("Note").   A copy of the Note is attached as Exhibit 2.

Drafted by:
      D. Alexander Martin
      O'Dess and Associates, S.C.
      1414 Underwood Avenue, Suite 403
      Wauwatosa, WI 53213
      (414) 727-1591
      (414) 727-1590 fax
      dmartin@odesslaw.com

3

3.     Debtor's obligations under the Note are secured by a mortgage ("Mortgage") of even date, and duly assigned to Fannie Mae, on real property located at 3706 North 26th Street, Milwaukee, Wisconsin 53206 ("Property").  A copy of the Mortgage and Assignments of Mortgage is attached as Exhibits 3 through 5.

4.     As of the date of the filing of this case, the approximate payoff balance of this loan, according to Seterus, Inc.'s records, is $71,950.98.

5.     Since the filing of this case, debtor has failed to comply with his proposed chapter 13 plan and the terms and conditions of the Note and Mortgage by failing to make the post-petition mortgage payments which came due October 1, 2017, through January 1, 2018, at $776.93, each, and February 1, 2018, at $764.70, each.  A post-petition mortgage payment history is attached as Exhibit 6.

6.     Upon information and belief, the Property has an approximate value of $34,200.00 based upon the debtor's schedules.

7.     Based upon the above, there is a lack of adequate protection as to the secured interest involved herein, the Property is burdensome and of inconsequential value to the bankruptcy estate, and due to debtor's failure to make post-petition mortgage payments cause exists to terminate the automatic stay and make inapplicable the 14 day stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3).

8.     Movant seeks relief for the purposes of exercising its remedies against the Property as permitted by the Note and Mortgage and applicable non-bankruptcy law, including

Drafted by:
    D. Alexander Martin
    O'Dess and Associates, S.C.
    1414 Underwood Avenue, Suite 403
    Wauwatosa, WI 53213
    (414) 727-1591
    (414) 727-1590 fax
    dmartin@odesslaw.com

4

foreclosure proceedings in state court, and contacting the debtor by telephone or written correspondence to, at Movant's option, offer, provide, and enter into a forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement.

9.      Movant further seeks an order withdrawing its proof of claim (15-1) and authorizing and directing the standing chapter 13 trustee not to make any further payments from funds of the estate on the claim upon entry of an order granting relief from the automatic stay and abandonment.

10.     Movant has retained counsel to pursue this motion and anticipates incurring attorneys' fees and costs for which it may seek reimbursement.

WHEREFORE, Movant respectfully requests that this court enter an order:

A.      granting Movant relief from the automatic stay so that Movant, its successors and assigns, may exercise its remedies against the Property as permitted by the Note and Mortgage and applicable non-bankruptcy law, including foreclosure proceedings in state court, and authorizing Movant to contact the debtor by telephone or written correspondence to, at Movant's option, offer, provide, and enter into a forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement;

B.      granting abandonment of the bankruptcy estate's interest in the Property;

C.      declaring that the relief granted herein shall survive the conversion of this case from chapter 13 to any other chapter under the Bankruptcy Code;

Drafted by:
        D. Alexander Martin
        O'Dess and Associates, S.C.
        1414 Underwood Avenue, Suite 403
        Wauwatosa, WI 53213
        (414) 727-1591
        (414) 727-1590 fax
        dmartin@odesslaw.com

5

D.    withdrawing Movant's proof of claim (15-1) and authorizing and directing the standing chapter 13 trustee not to make any further payments on the claim effective on entry of an order lifting the automatic stay and abandoning the property from the estate;

E.    making inapplicable the 14 day stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3); and,

F.    granting such other and further relief as the court deems just and appropriate.

Dated at Wauwatosa, Wisconsin this 27 day of _February_, 2018.

O'DESS AND ASSOCIATES, S.C.
Attorneys for Movant


By:    D. Alexander Martin
       State Bar ID No. 1046591

Case No. 17-29659-svk

Drafted by:
    D. Alexander Martin
    O'Dess and Associates, S.C.
    1414 Underwood Avenue, Suite 403
    Wauwatosa, WI 53213
    (414) 727-1591
    (414) 727-1590 fax
    dmartin@odesslaw.com

6

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:
THOMAS PASCAL,
    Debtors.

Chapter 13
Case No. 17-29659-SVK

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 27th day of _February_, 2018, he caused a

copy of this notice of motion and motion for relief from automatic stay and abandonment to be

served by U.S. mail on debtor, Thomas Pascal, at 2146 North 52nd Street, Milwaukee, WI 53206;

and, on the creditors listed in the attached matrix; and, on the same date by electronic means *via*

CM/ECF on the debtor's counsel, David G. Kingstad; and, on the chapter 13 trustee, Rebecca R.

Garcia, and the office of the United States Trustee.

Dated at Wauwatosa, Wisconsin this 27th day of _February_, 2018.

D. Alexander Martin

Creditor Mailing Matrix (Case No. 17-29659-svk)

Drafted by:
D. Alexander Martin
O'Dess and Associates, S.C.
1414 Underwood Avenue, Suite 403
Wauwatosa, WI 53213
(414) 727-1591
(414) 727-1590 fax
dmartin@odesslaw.com

2

Label Matrix for local noticing
0757-2
Case 17-29659-svk
Eastern District of Wisconsin
Milwaukee
Wed Feb 21 16:37:33 CST 2018

Carrington Mortgage Services, LLC
c/o Randall S. Miller & Associates, P.C.
120 N. LaSalle Street, Suite 1140
Chicago, IL 60602-2426

Nationstar Mortgage LLC d/b/a Mr. Cooper
c/o Gray & Associates, L.L.P.
16345 W Glendale Dr
New Berlin, WI 53151-2841

PHH Mortgage Corporation
c/o Gray & Associates, L.L.P.
16345 W Glendale Dr.
New Berlin, WI 53151-2841

Seterus, Inc. as the authorized subservicer
c/o O'Dess and Associates, S.C.                *
1414 Underwood Ave., Suite 403
Wauwatosa, WI 53213-2653

United States Attorney's Office
517 E. Wisconsin Ave.
Room 530
Milwaukee, WI 53202-4509

Wisconsin  Department  Of Revenue
Special Procedures Unit
P.O. Box 8901
Madison, WI 53708-8901

Wisconsin Dept. Of Revenue
Special Procedures Unit
P.O. Box 8902
Madison, WI 53708-8902

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

Carrington Mortgage Services
P.O. Box 5001
Westfield, IN 46074-5001

Carrington Mortgage Services, LLC
1600 South Douglass Road
Anaheim, CA 92806-5951

Chase Card Service
P.O. Box 15298
Wilmington, DE 19850-5298

City of Milwaukee - City Treasurer
200 East Wells Street
Milwaukee, WI 53202-3599

Fannie Mae
c/o Seterus, Inc.                *
PO Box 1047
Hartford, CT 06143-1047

Federal National Mortgage Assoc.   *
14221 Dallas Parkway, Ste 1000
Dallas, TX 75254-2946

IRS
P.O. Box 7346
Philadelphia, PA 19101-7346

(p)LANDMARK CREDIT UNION
P O BOX 510870
NEW BERLIN WI 53151-0870

Marine Credit Union
P O Box 309
Onalaska, WI 54650-0309

Marine Credit Union
PO Box 309
Fond Du Lac, WI 54936-0309

Mr. Cooper
8950 Cypress Waters Blvd.
Coppell, TX 75019-4620

Nationstar Mortgage LLC d/b/a Mr. Cooper
PO Box 619096
Dallas, TX 75261-9096

O'Dess and Associates, S.C.
Attorney M. Abigail O'Dess        *
1414 Underwood Avenue
Milwaukee, WI 53213-2649

Office of the U. S. Trustee        *
517 East Wisconsin Ave.
Room 430
Milwaukee, WI 53202-4510

PHH Mortgage Corporation
2000 Midlantic Drive, #300
Mount Laurel, NJ 08054-1512

PHH Mortgage Corporation
One Mortgage Way, Mail Stop SV01
Mt. Laurel, NJ 08054-4637

Seterus
14523 SW Millikan Way        *
Suite 200
Beaverton, OR 97005-2352

WE Energies
Attn Bankruptcy Dept RM A130
333 W Everett St
Milwaukee, WI 53203-2803

David G. Kingstad
Kingstad Law Firm, LLC
8081 West Layton Avenue        *
Suite C
Greenfield, WI 53220-3712

Rebecca R. Garcia
Chapter 13 Trustee        *
PO Box 3170
Oshkosh, WI 54903-3170

Thomas Pascal
2146 North 52nd Street
Milwaukee, WI 53208-1135

Notice and Motion will not be served by US Mail on the entities marked with asterisk above or the entities at the addresses below.

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Bank of America
P.O. Box 982235
El Paso, TX 79998-2235

LANDMARK CREDIT UNION
P.O. BOX 510870
NEW BERLIN, WI 53151-0870

(d)Landmark Credit Union
5445 S. Westridge Drive
New Berlin, WI 53151

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Carrington Mortgage Services
PO Box 5001
Westfield, IN 46074-5001

(d)Wisconsin Department of Revenue
Special Procedures Unit
P.O. Box 8901
Madison, WI 53708-8901

End of Label Matrix
Mailable recipients     29
Bypassed recipients      2
Total                   31

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

THOMAS PASCAL,

Debtors.

Chapter 13

Case No. 17-29659-SVK

---

## AFFIDAVIT SUPPORTING MOTION FOR RELIEF FROM AUTOMATIC STAY

---

STATE OF _NC_ )

COUNTY OF _Durham_ ) ss.

Before me, the undersigned authority, personally appeared the person identified below, who being by me duly sworn, deposed as follows:

1. My name is _PAULETTE PICKARD_, I am of sound mind, lawful age and capable of making this Affidavit. The statements set forth in this Affidavit are true and correct based on my personal knowledge and review of the business records described herein. I am authorized to make this Affidavit on behalf of Seterus, Inc. Seterus, Inc. is the authorized subservicer of the loan and is authorized to act on behalf of the owner of the note, Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America. A true and correct copy of the Limited Power of Attorney is attached hereto as Exhibit 1 and incorporated by reference herein.

2. This Affidavit is submitted in support of the motion seeking relief from the automatic stay (the "Motion") by Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America, its Successors and/or Assigns ("Movant"), in the above-captioned case.

3. I am employed by Seterus, Inc. as a _BANKRUPTCY SPECIALIST_ In that capacity, I am familiar with the books of account and have examined all books, records, and documents kept concerning the transaction alleged in the Motion. All of these books, records, and documents are kept in the regular course of business and are made at or near the time of the transaction using information transmitted by persons with personal knowledge of the facts. It is the regular practice to make and keep these books, records and documents. All of these books, records, and documents are managed by employees or agents whose duty it is to keep the books, records, and documents accurately and completely.

4. My responsibilities include, but are not limited to, handling bankruptcy accounts and ascertaining amounts due and payable.

5. I have personal knowledge of the facts contained in this Affidavit. Specifically, I have reviewed and have personal knowledge of the records related to the loan account associated with the certain property described as 3706 North 26th Street, Milwaukee, Wisconsin 53206.

6. Movant is the current holder of the note. A true and correct copy of the note is attached as Exhibit 2.

7. Movant is the current holder of the mortgage. A true and correct copy of the mortgage is attached hereto as Exhibit 3. A true and correct copy of the Assignments of Mortgage are attached as Exhibits 4 and 5.

8. As of February 16, 2018, there are one or more defaults in paying debtor's post-petition amounts due with respect to the note.

9. As of the date of the filing of this case, the approximate payoff balance of this loan, according to Seterus, Inc.'s records, is $71,950.98.

10. The following chart sets forth those post-petition payments, due pursuant to the terms of the note, that have been missed by the debtor as of February 16, 2018:

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| *4* | *10/1/17* | *1/1/18* | *$451.42* | *$325.51* | *$776.93* | *$3,107.72* |
| *1* | *2/1/18* | *2/1/18* | *$451.42* | *$313.28* | *$764.70* | *$764.70* |
| Less postpetition partial payments (suspense balance): | | | | ($0.00) | | |

**Total: $3,872.42**

11. As of February 16, 2018, the total postpetition arrearage/delinquency is $3,872.42, consisting of (i) the foregoing total of missed postpetition payments in the amount of $3,872.42, plus (ii) the following postpetition fees[1]:

| Description | Amount |
|---|---|
| None | $0.00 |

---

[1] The total of missed postpetition payments for this escrow loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, postpetition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, movant will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total postpetiton arrearage/delinquency is qualified accordingly.

12.    Attached hereto as Exhibit 6 and incorporated herein by reference is a summary of the post-petition mortgage payment history since the post-petition mortgage payments were last current.

13.    Based on the debtor's schedules, the estimated market value of the property is $34,200.00.

14.    Based on the approximate payoff balance of this loan and the estimated market value of the property, debtor do not have any equity in the property.

I solemnly affirm under the penalty of perjury and upon personal knowledge that the contents of the foregoing paper are true.

EXECUTED on _2/23_____2018_.

By: _____
Name: _Paulette Pickard_____

STATE OF _North Carolina_
                               ) ss.
COUNTY OF _Wake_    )

Subscribed and sworn to me the undersigned authority on this _23_____ day of _february_____, 2018.

My Commission Expires: _June 24, 2018_

_____
Notary Public in and for the
State of _North Carolina_

# EXHIBIT 1

Washington County, Oregon        **2011-076340**
10/31/2011 02:15:56 PM
D-PA            Cnt=1  Stn=2  S AKINS
$10.00 $5.00 $11.00 $15.00 - Total = $41.00

0164447620110076340002022
I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

Record and Return to:
Seterus, Inc.
Title Services Department
14523 SW Millikan Way, Suite 200
Beaverton, OR 97005

# LIMITED POWER OF ATTORNEY

## FROM: Federal National Mortgage Association

## TO: SETERUS, INC

## LIMITED POWER OF ATTORNEY

Federal National Mortgage Association, a corporation organized and existing under the laws of the United States of America, having an office for the conduct of business at 13150 Worldgate Drive, Herndon, Virginia 20170, constitute and appoints Seterus Inc. 8501 IBM Drive, Building 201 #2DD188, Charlotte, North Carolina 28262 (headquarters), a Corporation organized and existing under the laws of the state of Delaware, its true and lawful Attorney-in-Fact, and in its name, place, and stead and for its use and benefits, to execute, endorse, and acknowledge all documents customarily and reasonably necessary and appropriate for:

1. the release of a borrower from personal liability under the mortgage or deed of trust following an approved transfer of ownership of the security property;

2. the full satisfaction or release of a mortgage or the request to a trustee for a full reconveyance of a deed of trust;

3. the partial release or discharge of a mortgage or the request to a trustee for a partial reconveyance or discharge of a deed of trust;

4. the modification or extension of a mortgage or deed of trust;

5. the subordination of the lien of a mortgage or deed of trust;

6. the completion, termination, cancellation, or rescission of foreclosure relating to a mortgage or deed of trust, including (but not limited to) the following actions:

   a. the appointment of a successor or substitute trustee under a deed of trust, in accordance with state law and the deed of trust;
   b. the issuance of a statement of breach or nonperformance;
   c. the issuance or cancellation or rescission of notices of default;
   d. the cancellation or rescission of notices of sale; and
   e. the issuance of such other documents as may be necessary under the terms of the mortgage, deed of trust, or state law to expeditiously complete said transactions, including, but not limited to, assignments or endorsements of mortgages, deeds of trust, or promissory notes to convey title from Fannie Mae to the Attorney-in-Fact under this Limited Power of Attorney;

7. the conveyance of properties to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), or a state or private mortgage insurer; and

8. the assignment or endorsement of mortgages, deeds of trust, or promissory notes to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), a state or private mortgage insurer, or Mortgage Electronic Registration System (MERS™).

The undersigned gives to said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary, and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted under this Limited Power of Attorney upon the exercise of such power of the Attorney-in-Fact that all conditions precedent to such exercise of power has been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

IN WITNESS WHEREOF, I have hereunto set my hand this 12th day of September, 2011.

Federal National Mortgage Association

By: _____
Barbara Cushman
Asst. Vice President

By _____
Shanicka Singleton
Assistant Secretary

STATE OF VIRGINIA }
COUNTY OF FAIRFAX }

The foregoing instrument was acknowledged before me, a notary public commissioned in Fairfax County, Virginia this 12th day of September, 2011 by Barbara Cushman, Assistant Vice President, and Shanicka Singleton, Assistant Secretary of Federal National Mortgage Association, a United States Corporation, on behalf of the corporation.

_____
Notary Public: Francisco Nicco-Annan
My Commission Expires: 02/28/2015

Francisco Nicco-Annan
NOTARY PUBLIC
Commonwealth of Virginia
Reg #7387255
My Commission Expires 2/28/2015



I, *Richard W. Hobernicht*, Director of Assessment
and Taxation and Ex-Officio County Clerk for
Washington County, do hereby certify this to be a
true and correct copy of the original.

Date: _November 01, 2011_

By: _____, Deputy

EXHIBIT 2

  

## NOTE

February 21, 2006
[Date]

Wauwatosa
[City]

Wisconsin
[State]

3706 North 26th Street          ,Milwaukee,WI 53206
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 70,500.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CSMC Inc., dba Central States Mortgage, Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.6250          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

Solely for the purpose of computing interest, a monthly payment received by the Note Holder within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the          1st          day of each month beginning on          April 1, 2006          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on          March 1, 2036          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 10425 West North Ave., #100
Wauwatosa, WI 53226          or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $451.42

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.



0

WISCONSIN FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6N(WI) (0005)          MW 05/00          Form 3280 1/01
VMP MORTGAGE FORMS - 1000(521-7291
Page 1 of 3          Initials:



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.0000     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this

-5N(WI) (0005)

Form 3250 1/01
Initials: _____

Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.


WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_Thomas Pascal_ _____ (Seal)          _____ (Seal)
Thomas Pascal                        -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower


PAY TO THE ORDER OF _____

WITHOUT RECOURSE                                        [Sign Original Only]
ABN AMRO MORTGAGE GROUP, INC.

MARGARET A. BEZY
FIRST VICE PRESIDENT

0

ⓤ -5N(WI) (0005)                   Page 3 of 3                   Form 3250 1/01

PAY TO THE ORDER OF

## ABN AMRO MORTGAGE GROUP, INC.

WITHOUT RECOURSE THIS

2/21/06

CSMC INC. dba
CENTRAL STATES MORTGAGE

*Wendy L. Buth*

WENDY L. BUTH  ASSISTANT V.P.

# EXHIBIT 3

19



# MORTGAGE

DOC.# 09220129

REGISTER'S OFFICE | SS
Milwaukee County, WI|

RECORDED    04/18/2006  02:52PM

JOHN LA FAVE
REGISTER OF DEEDS

AMOUNT:      47.00

DOCUMENT NUMBER

NAME & RETURN ADDRESS
CSMC Inc., dba Central
States Mortgage
10425 West North Ave., #100,
Wauwatosa, WI 53226

PARCEL IDENTIFIER NUMBER
270-0242-2

────────────[Space Above This Line For Recording Data]────────────

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    February 21, 2006
together with all Riders to this document.
(B) "Borrower" is Thomas Pascal, Unmarried

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is CSMC Inc., dba Central States Mortgage

Lender is a Corporation
organized and existing under the laws of    the State of Wisconsin

0
Form 3050 1/01

WISCONSIN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6(WI) (0006)
Page 1 of 18         LAW 06/00       Initials.
VMP MORTGAGE FORMS - (800)621-7291

Doc Yr: 2006 Doc # 09220129 Page # 1 of 19

Lender's address is  10425 West North Ave., #100, Wauwatosa, WI 53226

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated       February 21, 2006       .
The Note states that Borrower owes Lender Seventy Thousand Five Hundred and no/100
                                                                                    Dollars
(U.S. $70,500.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than       March 1, 2036       .
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

0

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the
          County                    of                    Milwaukee                    :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
See Attached Legal Description. Tax Key Number: 270-0242-2 This is Not. 7P Homestead Property.  This is a Refinance Transaction.


which currently has the address of
3706 North 26th Street                                                          [Street]
Milwaukee                              [City], Wisconsin 53206          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

Initials 7P                                                          0

-6(WI) (0005)                    Page 3 of 15                    Form 3050  1/01

Doc Yr: 2006 Doc # 09220129 Page # 3 of 19

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts



Initials: _____

Page 4 of 15                                                   Form 3050   1/01

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



Initials: TP

0

-6(WI) (0005)                    Page 6 of 15                                     Form 3050   1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

0

Doc Yr: 2006 Doc # 09220129 Page # 6 of 19

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable

0

Doc Yr: 2006 Doc # 09220129 Page # 7 of 19

Attorneys' Fees (as defined in Section 25) to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Doc Yr: 2006 Doc # 09220129 Page # 8 of 19

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



Initials: P

6(WI) (0005)    Page 9 of 16    Form 3050   1/01

0

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25), property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0

Doc Yr: 2006 Doc # 09220129 Page # 12 of 19



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Accelerated Redemption Periods.** If the Property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

25. **Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

0

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____  *Thomas Pascal* _____ (Seal)
Thomas Pascal                                    -Borrower


_____  _____ (Seal)
                                                  -Borrower


_____ (Seal)   _____ (Seal)
                          -Borrower                    -Borrower


_____ (Seal)   _____ (Seal)
                          -Borrower                    -Borrower


_____ (Seal)   _____ (Seal)
                          -Borrower                    -Borrower

0

-6(WI) (0008)                    Page 14 of 15          Form 3050   1/01

STATE OF WISCONSIN,

County ss:

The foregoing instrument was acknowledged before me this    February 21, 2006
by Thomas Pascal, Unmarried

My Commission Expires: 3.23.08



Notary Public, State of Wisconsin
Dawn J. Bainter

This instrument was prepared by
Diane Welsh

0

-6(WI) (0006)                    Page 16 of 16                    Form 3050  1/01

File No.: [REDACTED]

## EXHIBIT A

Lot 18, in Block 2, in Franklin Heights, being Lots 13 to 21, both inclusive, in Pease's Subdivision, in the South ½ of the Northwest ¼ of Section 7, in Township 7 North, Range 22 East, in the City of Milwaukee, County of Milwaukee, State of Wisconsin.

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **21st** day of **February 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to CSMC Inc., dba Central States Mortgage, Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 3706 North 26th Street    ,Milwaukee,WI 53206

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

0

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

VMP®-57R (0411)
Page 1 of 3        Initials: IP
VMP Mortgage Solutions, Inc.
(800)521-7291  MW 11/04

E. **"BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

F. **BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. **ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

0

Doc Yr: 2006 Doc # 09220129 Page # 18 of 19

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_Thomas Pascal_ _____ (Seal)
Thomas Pascal                   -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

0

VMP®-57R (0411)                Page 3 of 3                Form 3170 1/01

EXHIBIT 4

3

## CORPORATE ASSIGNMENT OF
## REAL ESTATE MORTGAGE

DOC.# 09220130

LOAN NO.

REGISTER'S OFFICE | SS
Milwaukee County, WI |

RECORDED   04/18/2006   02:52PM

JOHN LA FAVE
REGISTER OF DEEDS

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to ABN Amro Mortgage Group, Inc.

all the rights, title and interest of undersigned in and to that certain Real Estate Mortgage dated  February 21, 2006
executed by Thomas Pascal, Unmarried

AMOUNT:      15.00

to CSMC Inc., dba Central States Mortgage

and whose address is 10425 West North Ave., #100
Wauwatosa, WI 53226

After recording, return to:

CSMC Inc., dba Central State
10425 West North Ave., #100
Wauwatosa, WI 53226

recorded on *APRIL 18, 2006*  in Book/Volume No.             , page(s)
as Document No. *09220129*  ,     MILWAUKEE
County Records, State of Wisconsin  , on real estate legally described as follows:

See Attached Legal Description.
Tax Key Number: 270-0242-2
This is Homestead Property.
This is a Refinance Transaction.

TOGETHER with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Real Estate Mortgage.

ASSIGNMENT OF REAL ESTATE MORTGAGE
ISC/OASM**/0592-L.

PAGE 1 OF 2



LOAN NO. ████████

DATED: February 21, 2006        CSMC Inc., dba Central States Mortgage

*Wendy L. Buth*

Witness: _____    Wendy L. Buth        Assistant Vice-President

Witness: _____    _____.

STATE OF    Wisconsin          }
COUNTY OF   Milwaukee           } ss:

On  February 21, 2006       before me, the undersigned, a Notary Public in and for the said
County and State, personally appeared  Wendy L. Buth,

to me personally known, who, being duly sworn by me, did say that he/she/they is/are the
    Assistant Vice-President
of the corporation named herein which executed the within instrument, that the seal affixed to said
instrument is the corporate seal of said corporation; that said instrument was signed and sealed on behalf of
said corporation pursuant to its by-laws or a resolution of its Board of Directors and that he/she
acknowledges said instrument to be the free act and deed of said corporation.

Notary Public for the state of Wisconsin
My commission expires: 8/13/06

(Official Seal)

DRAFTED BY:  D. L. Creamer

ASSIGNMENT OF REAL ESTATE MORTGAGE
ISC/CASM™/0692-L                    PAGE 2 OF 2

File No. [REDACTED]

## EXHIBIT A

Lot 18, in Block 2, in Franklin Heights, being Lots 13 to 21, both inclusive, in Pease's Subdivision, in the South ½ of the Northwest ¼ of Section 7, in Township 7 North, Range 22 East, in the City of Milwaukee, County of Milwaukee, State of Wisconsin.

# EXHIBIT 5

Licensed to Wisconsin Title and not for sublicense, relicense or any other transfer

DOC.# 10335637
RECORDED
02/13/2014 10:46AM
JOHN LA FAVE
REGISTER OF DEEDS
Milwaukee County, WI
AMOUNT: $30.00

FEE EXEMPT #: 0
0
***This document has been
electronically recorded and
returned to the submitter.**

When Recorded Return To:
CitiMortgage, Inc.
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Citi Loan No
Soterus Loan
Fannie Loan
Tax Code/PIN: 270-0242-2

## ASSIGNMENT OF MORTGAGE

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, CITIMORTGAGE, INC. SUCCESSOR BY MERGER TO ABN AMRO MORTGAGE GROUP, INC.,WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO, 63368, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY, SUITE 100, DALLAS, TX 75254, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage bearing the date 02/21/2006, made by THOMAS PASCAL to CSMC INC. DBA CENTRAL STATES MORTGAGE, and recorded on in Official Records Book , Page , Document # 09220129, in office of the Register of Deeds of MILWAUKEE County, Wisconsin, to wit:
LOT 13, IN BLOCK 2, IN FRANKLIN HEIGHTS, BEING LOTS 13 TO 21, BOTH INCLUSIVE, IN PEASE'S SUBDIVISION, IN THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF SECTION 7, IN TOWNSHIP 7 NORTH, RANGE 22 EAST, IN THE CITY OF MILWAUKEE, COUNTY OF MILWAUKEE, STATE OF WISCONSIN.

IN WITNESS WHEREOF, this Assignment was executed this 12th day of February in the year 2014.
CITIMORTGAGE, INC. SUCCESSOR BY MERGER TO ABN AMRO MORTGAGE GROUP, INC.


KRISTOPHER SANDBERG
VICE PRESIDENT

All Authorized Signatories whose signatures appear above have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 12th day of February in the year 2014, by Kristopher Sandberg as VICE PRESIDENT of CITIMORTGAGE, INC. SUCCESSOR BY MERGER TO ABN AMRO MORTGAGE GROUP, INC., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.


INANCE M. MOSS - NOTARY PUBLIC
COMM EXPIRES: 08/05/2016

Franci M. Moss
Notary Public State of Florida
My Commission # EE 222296
Expires August 6, 2016

This document was drafted by: H.Lopez/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
CMOAV                    DOCR

# EXHIBIT 6

```
LOAN: [REDACTED]                BANKRUPTCY POST-PETITION LEDGER              DATE: 02/16/18
                                                                             PAGE: 1
DEBTOR:                                   PROPERTY ADDRESS:
THOMAS PASCAL                             3706 N 26TH ST
                                          MILWAUKEE, WI 53206-1336

BANKRUPTCY CHAPTER: 13                    FIRST POST-PETITION DUE DATE:    10/01/17
CASE #: 17-29659                          CURR POST-PETITION DUE DATE:     10/01/17
FILING DATE: 09/29/17                     CURR POST-PETITION PMT AMT:        776.93
************************************************************************************
                             POST-PETITION AMOUNT DUE

POST-PETITION PAYMENT(S) DUE:
NO    FROM       TO       PAYMENT AMOUNT   PAYMENT TOTAL
 4  10/01/17  01/01/18         776.93        3,107.72
 1  02/01/18  02/01/18         764.70          764.70

SUB-TOTAL POST-PETITION AMT DUE:           3,872.42
LESS DEBTOR SUSPENSE:                            .00
TOTAL POST-PETITION AMT DUE:               3,872.42

************************************************************************************
                             POST-PETITION LEDGER
------------------------------------------------------------------------------------
LDGR DTE    AMOUNT RECD   DUE DATE    DESCRIPTION
EFF DATE    CHK DATE    CHECK NUMBER  AMOUNT APPLD    AMOUNT DUE  NEW BALANCE
------------------------------------------------------------------------------------
10/27/17                            BEGINNING DEBTOR SUSPENSE BALANCE
                                                                         .00
```